UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Kathy Mayer,

                Plaintiff,

    vs.

Dwight Walvatne, Grant County
Sheriff; Grant County; Grant
County Sheriff's Department;
Nichole O. Mahoney d/b/a Grant
County Abstract Company; and
Unknown Does 1-10,

                Defendants.         Civ. No. 07-1958 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Nichole Mahoney ("Mahoney") for Summary Judgment, and the Motion of Dwight Walvatne ("Walvatne"), Grant County (the "County"), and the Grant County Sheriff's

Department (the "Sheriff's Department")(collectively, the "County Defendants"), for Summary Judgment.  A Hearing on the Motions was conducted on March 27, 2008, at which time, the Plaintiff Kathy Mayer ("Mayer") appeared pro se; Mahoney appeared by Katrina I. Wass, Esq.; and the County Defendants appeared by Joseph M. Bromeland, Esq.  For reasons which follow, we recommend that Mahoney's Motion be granted, and that the County Defendants' Motion also be granted.

## II.  Factual and Procedural Background

Mayer brings this action against Mahoney, d/b/a Grant County Abstract Company ("Abstract Company"), and the County Defendants, alleging that they have committed violations of Federal law, and have violated her civil rights.  Specifically, Mayer alleges violations of Title 42 U.S.C. §§1983, 1985, 1986, and 1988, and additionally brings several State law claims.

Mayer filed a Verified Complaint in this matter on April 19, 2007.[1]  See, Docket No. 1.  In her Complaint, Mayer alleges that, on December 15, 2006, she went to the Abstract Company in order to close on the sale of a property in Ashby,

---

[1]"A litigant's verified complaint is generally considered an affidavit for purposes of summary judgment."  Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994); see also, Hanks v. Prachar, 457 F.3d 774, 775 (8th Cir. 2006); Ward v. Moore, 414 F.3d 968, 970 (8th Cir. 2005).

Minnesota (the "Property"), which she was purchasing from Bryan Nelson ("B. Nelson"), and his wife Jody Nelson, and that, after the sale was completed, Mahoney refused to allow Mayer to take the deed to the Property, and insisted that Mahoney be allowed to record the deed that day.  Id. at pp. 8-9.  Mayer did not want to record the deed, and instead, took the deed to the Property over Mahoney's protests.  Id. According to Mayer, Mahoney then refused to pay the property taxes, that were owed on the Property, despite having been given the money to do so, id. at p. 9, which, Mayer alleges, prevented her from securing "homestead rights" on the Property, to which she would otherwise have been entitled.  Id. at p. 15.

According to the Complaint, Mahoney subsequently caused B. Nelson "to perform assault and battery" on Mayer.  Id. at p. 11.  Mayer also claims that Mahoney hired Walvatne, who is the Sheriff of Grant County, Minnesota, to interfere with the sale of the Property, and on December 20, 2006, Mayer called Walvatne, and he confirmed that Mahoney had asked him to speak with her about the deed.  Id.

The Complaint further alleges that, on January 4, 2006, Mayer went to the Auditor's Office, in the Grant County Courthouse (the "Courthouse"), in order to pay the delinquent property taxes on the Property, which had not been paid by Mahoney, and that, as she left the Auditor's Office, Walvatne arrested her, on an allegedly stale

Warrant, and detained her until she posted bail. <u>Id.</u> at pp. 12-13. Mayer alleges that, as a result of the Defendants' actions, she has been ostracized by her neighbors, and is facing excommunication from her Church. <u>Id.</u> at p. 16.

Mayer alleges five (5) Federal causes of action against each of the Defendants: 1) unreasonable seizure in violation of the Fourth Amendment; 2) due process violations under the Fifth Amendment; 3) deprivation of the right of association, to petition for redress of grievance, and to practice one's religious faith under the First Amendment; 4) due process violations under the Fourteenth Amendment; and 5) "Municipal Liability/Custom and Policy." Mayer also asserts two (2) claims brought under State law, namely: 6) illegal arrest and detention, deprivation of liberty and privacy, excessive bail, and unreasonable seizure in violation of various provisions of the State Constitution; and 7) intentional infliction of emotional distress ("IIED").

On February 8, 2008, Mahoney filed a Motion for Summary Judgment, see, <u>Docket No. 23</u>, and on the same day, the County Defendants also moved for Summary Judgment. See, <u>Docket No. 40</u>.

### III.  <u>Discussion</u>

A.    <u>Standard of Review</u>. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 1004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an opposing party may not rely merely

- 5 -

on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center</u>, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.    <u>Legal Analysis</u>.

1.    <u>The County Defendants' Motion for Summary Judgment on the</u>
<u>Federal Claims</u>.  The County Defendants argue that Mayer's Complaint should be
subject to summary adjudication, as she has failed to establish the essential elements
of any of her claims, and because they are protected by the doctrines of qualified and
official immunity.  We begin with an analysis of Mayer's individual capacity claims,
as to Walvatne, and then we consider her claims against Walvatne, in his official
capacity, as well as the claims alleged against the County, and the Sheriff's
Department.

a.    <u>Federal Claims Against Walvatne</u>.

i.    <u>Count One: Unreasonable Search and Seizure</u>.  The
Fourth Amendment provides that "the right of people to be secure in their persons,
houses, papers, and effects, against unreasonable searches and seizures, shall not be
violated."  <u>United States Constitution, Amendment IV</u>.  An essential purpose behind
the Fourth Amendment's proscriptions is to impose standards of reasonableness upon
the exercise of law enforcement's discretionary powers, so as to safeguard an
individual's privacy from an arbitrary invasion by the Government.  See, <u>Delaware</u>
<u>v. Prouse</u>, 440 U.S. 648, 653-54 (1979); <u>Marshall v. Barlow's Inc.</u>, 436 U.S. 307, 312

(1978); <u>Camara v. Municipal Court</u>, 387 U.S. 523, 528 (1967). Therefore, whether a certain action is permissible, under the Fourth Amendment, "is judged by balancing [that action's] intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." <u>Id.</u> at 654.

In Count One, Mayer alleges that Walvatne violated her Fourth Amendment rights, when he arrested her without probable cause. Specifically, Mayer contends that the Warrant, on which she was arrested for failing to appear on a ticket for driving without proof of insurance, had previously been satisfied, and that, as a result of Walvatne's unlawful seizure of her person she was deprived of her personal property, in the form of the money that she had paid to post her bail. See, <u>Complaint</u>, supra at ¶¶22-23.

In support of the Motion for Summary Judgment, the County Defendants have submitted the Affidavit of Walvatne, in which he states that, on December 15, 2006, Mahoney contacted him concerning a disagreement that Mahoney had with Mayer, and that, since he determined that the dispute was a civil matter, he did not pursue a criminal investigation. See, <u>Docket No. 31</u>, at ¶2. Walvatne further attests that, at some time after December 15, 2006, he was told, by someone at the Sheriff's Department, that there was an outstanding Warrant for Mayer's arrest. <u>Id.</u> at ¶3. On

January 4, 2007, a County employee informed Walvatne that Mayer was at the Courthouse, and Walvatne went to the Courthouse, and arrested Mayer, on the basis of the outstanding Warrant, and he held her, in a room at the Courthouse, for a short period of time, until she produced cash to post bail. Id. at ¶¶4, 7.

The County Defendants have also submitted Mayer's entire Grant County criminal file, see, Affidavit of Joseph M. Bromeland ("Bromeland"), Docket No. 32, at Exhibit A, which includes:  1) a copy of the Complaint, that was issued to Mayer on September 29, 2006, for driving without proof of insurance, that states that she had a Court date on November 6, 2006, at 8:45 o'clock a.m.; 2) a copy of the arrest Warrant, that was issued by a Grant County District Court Judge on November 14, 2006, for Mayer's failure to appear in Court on that date, and that set bail in the amount of $587.00;  and 3) a copy of the Sheriff's Return of Arrest Warrant, that was made after Mayer was arrested, and posted the $587.00 bail on January 4, 2007.  On the basis of these documents, the County Defendants argue that Walvatne's arrest of Mayer was valid for, at the time of that arrest, nothing in Mayer's criminal case file demonstrated that the Warrant had been previously satisfied.

In opposition to the County Defendants' Motion, Mayer has submitted a Declaration, in which she attests that Walvatne arrested her on a Warrant, that he

knew, or should have known, had been previously satisfied.[2]  See, <u>Docket No. 49</u>, at

¶¶2-4; see also, <u>Complaint</u>, supra at ¶23.  In support of her position, Mayer notes that,

immediately following her arrest, she contacted "Deputy Sheriff Thor," who made a

"minimal inquiry," and found that the Warrant had been satisfied.   <u>Id.</u> at ¶9.

Pursuant to Minnesota Statutes Section 629.41, a State Court Judge may issue

an arrest Warrant based upon a defendant's failure to respond to a citation, and the

Warrant may be based "upon sworn facts establishing probable cause as set forth in

or with the citation and attached to the Complaint."   <u>Rule 6.01, Minnesota Rules of</u>

<u>Criminal Procedure, Subdivision 3</u>.   The Warrant, which was submitted by the

---

[2]Mayer further argues that, in their Statement of the Case, the County Defendants assert that Walvatne became aware of the outstanding Warrant, after Mahoney contacted Walvatne concerning her suspicion that Mayer was engaged in criminal activity, and that, if Walvatne had run, in fact, a search on the Warrant at that time, he would have found that it had been satisfied.  See, <u>Docket No. 49</u>, at ¶¶4, 6.  However, a Statement of the Case is not evidence that the Court may consider on a Motion for Summary Judgment and, in his Affidavit, Walvatne attests that the Statement of the Case is misleading, as he did not learn of the Warrant for Mayer's arrest until "well after" Mahoney called him concerning the dispute over the deed to the Property.  See, <u>Affidavit of Walvatne</u>, <u>Docket No. 31</u>, at ¶6.

In addition, Mayer has submitted a Declaration, in which she states that she has emails from Walvatne, in which he represents that he knew about the Warrant "a short time before the arrest."  <u>Declaration of Plaintiff</u>, <u>Docket No. 49</u>, at ¶4.  This does not contradict Walvatne's testimony, however, as he acknowledges that his knowledge of the outstanding Warrant led him to arrest Mayer.

Defendants, was issued on the basis of the Complaint that was dated September 29, 2006, and includes a sworn statement of facts, by the issuing officer, that he stopped Mayer for having a burned-out headlight in her car, and that, at the time of the traffic stop, she was unable to produce proof of insurance.

In addition, it is uncontested that the Complaint informed Mayer of her Court appearance, and that the Warrant for her arrest was issued, after she failed to appear for an initial appearance on November 6, 2006. Minnesota Statutes Section 629.30, Subdivision 2(1) provides that a law enforcement official may make an arrest on a valid Warrant, and Mayer stated in her deposition that Walvatne showed her the Warrant at the time of her arrest, and that she had no evidence that would establish that the Warrant was fraudulent. See, Affidavit of Bromeland, supra at Exhibit B, at pages 80, 83-86.

Although Mayer concedes that the Warrant, on which she was arrested, was facially valid, she urges that Walvatne had an obligation to inquire, with the State Court, as to whether the Warrant was outstanding. However, according to Mayer's own testimony, the Warrant had **not** been satisfied. At her deposition, Mayer clarified that, within a day of her arrest, she telephoned Thor Tollefson ("Tollefson"), who is the Chief of Police of Ashby, Minnesota, in order to ask him about the Warrant, and

- 11 -

he told her that, although he had received proof that she had been insured on the date that the Complaint was issued, he had failed to take that proof to the Court to have the Warrant dismissed.  See, <u>Affidavit of Bromeland</u>, supra at Exhibit B, pages 86-87; <u>Declaration of Plaintiff</u>, <u>Docket No. 49</u>, at ¶9.

According to Mayer, Tollefson told her that he would write a letter to the Court, and to the Sheriff's Office, in order to clear up his error, <u>id.</u> at page 88, and the Defendants have submitted a letter, that was written by Walvatne on January 5, 2007, that states that Walvatne, and Tollefson, had consulted with Mayer's insurance company, and had confirmed that she had vehicle insurance, in effect, on the day of her arrest.  <u>Id.</u> at Exhibit A.  As a result, even if Walvatne had called the Court, concerning the status of that Warrant, he would have only confirmed what he already knew, on the basis of the records of the Sheriff's Department, which is that a valid Warrant had been issued for Mayer's arrest, that had not been satisfied.

While, in the alternative, Mayer argues that Walvatne could have telephoned her insurance company, or the Ashby Police Department, concerning the validity of the Warrant prior to her arrest, we have found no precedent that would support a claim that a law enforcement officer has an obligation to conduct an independent investigation as to the facial validity of a lawful Warrant, nor can we find that such

- 12 -

a requirement would be reasonable, since imposing such an obligation would effectively transform police officers, and sheriff's deputies, into judicial officers, and fatally slow the effectiveness of law enforcement.

In Count One, Mayer also alleges that she did not "resist arrest in any manner to cause the use of force to effectuate the arrest," Complaint, supra at p. 17, which suggests that she might also be alleging a claim against Walvatne for excessive force. However, the only evidence in this Record, which would relate to such a claim, arises from Mayer's deposition testimony, in which she states that Walvatne was "aggressive" toward her, and "threatened [her] several times" by yelling at her, although she acknowledges that he did not hit her, or use any sort of physical force, and that she was not ever handcuffed.  Affidavit of Katrina I. Wass ("Wass"), Docket No. 26, at Exhibit A, at pages 79-83.

We analyze excessive force claims under the framework applicable to Fourth Amendment seizures.  See, McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 908 (8th Cir. 2005)("A seizure for Fourth Amendment purposes occurs when a government actor 'by means of physical force or show of authority * * * in some way restrain[s] the liberty of a citizen.'"), citing  Graham v. Connor, 490 U.S. 386, 395 n.10.  The test to determine whether the force, that was employed in

effecting an arrest was excessive, requires us to consider "whether the amount of force used was objectively reasonable under the particular circumstances." <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001), quoting <u>Greiner v. City of Champlin</u>, 27 F.3d 1346, 1354 (8th Cir. 1994).

Here, Mayer has not pled any facts that would allow us to find that Walvatne used **any** physical force in his interaction with her, or touched her in any way. "Not every push or shove by an officer violates the Fourth Amendment," and our Court of Appeals has held that "a de minimis use of force or injury is insufficient to support a finding of a constitutional violation." <u>Andrews v. Fuoss</u>, 417 F.3d 813, 818 (8th Cir. 2005)(citing cases). Here, Mayer has failed to plead any facts, which would support a claim for excessive force, and she may not assert a claim for excessive force, under Section 1983, by merely advancing conclusory allegations without factual support. See, <u>Robinette v. Jones</u>, 476 F.3d 585, 591 (8th Cir. 2007) ("Without * * * facts to demonstrate that there is a genuine issue for trial, * * * mere allegations * * * cannot defeat summary judgment."); <u>Weger v. City of Ladue</u>, 500 F.3d 710, 728 (8th Cir.

2007).   Therefore, we recommend that Summary Judgment be granted, in favor of

Walvatne, on Mayer's Fourth Amendment claims against him.[3]

> ii.   <u>Counts Two and Four:   Fifth and Fourteenth</u>

<u>Amendment Violations</u>.   In Counts Two and Four, Mayer alleges that, as a result of

her unlawful arrest by Walvatne, she was deprived of her liberty without Due Process

of law under the Fifth Amendment, as incorporated by the Fourteenth Amendment,

and in Count Four, she additionally alleges a violation of her right to equal protection

under the Fourteenth Amendment.

"'To establish a substantive due process claim, [a plaintiff] must show that the

government action was truly irrational, that is, something more than * * * arbitrary,

capricious, or in violation of state law.'"   <u>Graning v. Sherburne County</u>, 172 F.3d 611,

---

[3]Mayer also claims that she was unlawfully deprived of her property, as a result of having to pay bail following her allegedly unlawful arrest.   However, we find that Summary Judgment is also appropriate, as to that claim.   Specifically, Mayer concedes that the money, which she posted as bail, was returned to her on the Monday following her arrest, which took place on a Friday.   See, <u>Affidavit of Katrina I. Wass</u>, <u>Docket No. 26</u>, at Exhibit A, pp. 88-89.   Although Mayer brings this claim pursuant to the Fourth Amendment, we understand it to be more properly asserted as a due process violation for deprivation of property, and it is well-established that intentional deprivations of property do not violate the Due Process Clause as long as adequate post-deprivation remedies are available.   See, <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 538-44 (1981).   Since Mayer recovered her bail money within one (1) business day after her arrest, we recommend that her claimed deprivation of property be dismissed, as moot.

617 (8th Cir. 1999), quoting <u>Anderson v. Douglas County</u>, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994).  The government action in question must shock the conscience, or be otherwise offensive to notions of fairness and human dignity.  See, <u>Moran v. Clarke</u>, 296 F.3d 638, 647 (8th Cir. 2002); <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).  The Supreme Court has held that, to meet the standard for a substantive due process violation, the conduct must be "intended to injure in some way unjustifiable by any governmental interest." <u>Norris v. Engels</u>, 494 F.3d 634, 638 (8th Cir. 2007), cert. denied, --- U.S. ---, 128 S.Ct. 1655 (2008), quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n. 8 (1998).

On the basis of Mayer's pleadings, we understand that she is alleging that her right to substantive Due Process was violated, when she was arrested by Walvatne. However, as noted by our Court of Appeals, we analyze claims for wrongful arrest under the Fourth Amendment, see, <u>Wilson v. Spain</u>, 209 F.3d 713, 715-16 (8th Cir. 2000), and we have already found that Summary Judgment was appropriate, as to Mayer's claims for unlawful search and seizure and excessive force.  Accordingly, there can be no due process violation in that respect.

Of course, Courts have found that Due Process guards against prolonged detentions, without a Hearing, following an arrest pursuant to a valid Warrant.  See,

- 16 -

Davis v. Hall, 375 F.3d 703, 714 (8th Cir. 2004), citing Armstrong v. Squadrito, 152 F.3d 564, 576 (7th Cir. 1998).  However, here, we are unable to find that Walvatne's actions were so egregious as to violate substantive due process, when the Record establishes that Mayer was arrested without incident, pursuant to a facially valid Warrant, was not handcuffed, was placed in a "back room" for approximately thirty (30) minutes to one (1) hour, and was immediately released on the payment of bail. See, Affidavit of Wass, supra at Exhibit A, at pp. 79-80.

Mayer appears to also believe that she was wronged by having to use the cash, which she was carrying at the time of her arrest, in order to make bail, when she had intended to use the money to pay the allegedly delinquent property taxes on the Property.  Generously construed, we understand the to be a claim for a violation of procedural due process, which requires that the government provide fair procedures in order to afford its citizens an opportunity to prevent a loss of life, liberty, or property.  See, Birkenholtz v. Sluyter, 857 F.2d 1214, 1216 (8th Cir. 1988), citing Hurtado v. California, 110 U.S. 516, 531 (1884).  "'In a procedural due process claim, it is not the deprivation of property or liberty which is unconstitutional; it is the deprivation of property or liberty **without due process of law** -- without adequate procedures.'"  Id., quoting Daniels v. Williams, 474 U.S. 327, 339 (1986)(Stevens, J.,

concurring)[emphasis in original].  Here, however, we have already found that Mayer was lawfully arrested pursuant to a valid Warrant, which provided adequate due process.  Moreover, Mayer recovered the money that she posted for her bail on the first business day following her arrest.

Finally, Mayer's equal protection claim must also fail.   The Fourteenth Amendment's Equal Protection Clause requires Government actors to treat persons, who are similarly situated, alike.  See, City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); see also, Creason v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006).  However, Mayer has not alleged that Walvatne's actions were in any way based on her membership in a protected class, or that Walvatne treated similarly situated individuals differently.  In fact, at her deposition, Mayer acknowledged that she did not have any reason to believe that she was arrested, or subject to any disparate treatment by the Defendants, because of her race, or her religion.  See, Affidavit of Wass, supra at Exhibit A, pages 103-04.

Since we find that Mayer has not proffered any evidence, inclusive of any allegations in her Complaint, that would suggest that she is attempting to bring an equal protection claim, except for her conclusory employment of those words, we

- 18 -

recommend that the County Defendants' Motion for Summary Judgment on Counts Two and Four be granted, as to Walvatne.

iii.     Count Three: First Amendment Violation.  In Count Three, Mayer alleges that, through Walvatne's actions, she was deprived of her right of association, her right to petition for redress of grievance, and her right to practice her religious faith.

Freedom of association is a right protected by the First Amendment.  See, Republication Party of Minnesota v. White, 416 F.3d 738, 748 (8th Cir. 2005), cert. denied, 546 U.S. 1157 (2006).  The Supreme Court has stated that "we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Id., quoting Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984).  The analysis of a freedom of association claim involves a two-part inquiry, in which, if the plaintiff has alleged an associational right that is impacted by State action, we first determine whether the burden on an associational right is significant and, if it is significant, then we must consider whether a compelling State interest justifies that practice.  See,

Royer ex rel. Estate of Royer v. City of Oak Grove, 374 F.3d 685, 687 (8th Cir. 2004)(citing cases).

In the Complaint, supra at ¶29, Mayer alleges that, as a result of the Defendants' actions, she has been ostracized by her Church, and is facing excommunication. Specifically, Mayer alleges that her Church, and its elders, "have instructed their members to completely disassociate with [her] and her children," and that she is also "facing excommunication from the church based upon exercising her right to petition for redress of grievances in this manner." Id. Essentially, we understand Mayer to be alleging that her Church has expressed displeasure regarding her decision to file the present lawsuit, and has suggested that, as a result, she may no longer be welcome in that community.

However, at her deposition, Mayer conceded that, during the pendency of this lawsuit, she has continued to perform significant volunteer work for her Church, see, Affidavit of Wass, supra at Exhibit A, page 112, and she has not made any other substantive argument to support the claim. Moreover, even if we accepted that Mayer had been ostracized by her Church, she has not alleged that such conduct had anything to do with the action of any of the Defendants, but instead, she characterizes the reaction as a judgment, which was made by members of that community, as to the

nature of the present lawsuit.  Id. at page 112-13.[4]  The Defendants surely cannot be held responsible for the errant views of third-parties who, at least on this Record, formed whatever judgments they had of Mayer without participation from the Defendants.

Mayer also alleges that the actions, which were taken by the County Defendants, deprived her of her religious freedom.  See, Complaint, supra at ¶39.  The First Amendment also prohibits any law "respecting an establishment of religion, or prohibiting the free exercise thereof."  United States v. Corum, 362 F.3d 489, 495 (8th Cir. 1969), quoting United States Constitution, Amendment I.  Although Mayer did not allege any facts in the Complaint, that would support the claim, at her deposition, Mayer testified that she is currently unable to be married at her Church, and that, although no one at her Church had admitted that had anything to do with the events alleged in her Complaint, she "know[s] that it does."  Affidavit of Wass, supra at Exhibit A, page 113.  However, as was the case with her claim for freedom of association, Mayer has not alleged that the Defendants have taken any action that

---

[4]At her deposition, Mayer was asked about her right of association claim, and she acknowledged that she was not claiming that she had been deprived of her right to associate with any political party.  See, Affidavit of Katrina I. Wass, Docket No. 26, Exhibit A, at page 113.

would prevent her from her religious practice, and as we have previously noted, at her deposition, Mayer acknowledged that she spends most of her time volunteering at "the Christian school and the church," which is wholly inconsistent with any assertion that she has not been entirely limited in her ability to participate in her religion.  Id. at page 56.

Finally, in this Circuit, the right of access to the Courts is viewed as a component of the First Amendment right to petition the government for redress of grievances.  See, Harrison v. Springdale Water & Sewer Commission, 780 F.2d 1422, 1426 (8th Cir.1986); see also, Ringsred v. City of Duluth, 187 F. Supp. 2d 1141, 1156-57 (D. Minn. 2001) aff'd, 39 Fed.Appx. 480, 2002 WL 1379100 (8th Cir., June 27, 2002), cert. denied, 537 U.S. 1107 (2003); In re Workers Compensation Refund, 842 F. Supp. 1211, 1219 (D. Minn. 1994), aff'd, 46 F.3d 813, 822 (1995).  As our Court of Appeals has explained:

> An individual's constitutional right of access to the courts "cannot be impaired, either directly * * * or indirectly, by threatening or harassing an [individual] in retaliation for filing lawsuits. It is not necessary that the [individual] succumb entirely or even partially to the threat as long as the threat or retaliatory act was intended to limit the [individual's] right of access." Sanders [v. St. Louis County], 724 F.2d [665, 666 (8th Cir.1983) ].  The cases from this Circuit, as well as from others, make clear that

state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future. See, e.g., id.; Garland [v. Polley], 594 F.2d [1220, 1223 (8th Cir.1979) ]; Hall v. Sutton, 755 F.2d 786, 787 (11th Cir.1985); Matzker v. Herr, 748 F.2d 1142, 1150-51 (7th Cir.1984)("An act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper."); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir.1982), cert. denied, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983); Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir.1981); Silver v. Cormier, 529 F.2d 161, 163 (10th Cir.1976). An individual is entitled to "free and unhampered access to the courts." United States ex rel. Cleggett v. Pate, 229 F. Supp. 818, 821-22 (N.D. Ill.1964).

Harrison v. Springdale Water & Sewer Commission, supra at 1427-28.

By way of an example, in Harrison, supra at 1428, the Court determined that the plaintiffs' Complaint stated a cognizable cause of action, based on a claimed denial of access to the Courts, when the Complaint alleged that, in a suit by the plaintiffs against State actors, the State actors admitted to prosecuting a factually unsupported counterclaim against the plaintiffs, solely as a tactical means to pressure them into settling their case. Thus, while the plaintiffs' ability to file a lawsuit was not directly constrained, the Court found, nonetheless, that the defendants applied sufficient indirect pressure to restrict the plaintiffs' access to the Courts.

Here, Mayer has failed to introduce any evidence that she has been unable to file a lawsuit, because of any action of the County Defendants.  Moreover, at her deposition, Mayer confirmed that this legal  action was "the only Complaint I have," and acknowledged that she had not been prevented from filing the Complaint, or any other documents with the Court, as a result of the actions of any of the County Defendants.  <u>Affidavit of Wass</u>, supra, at page 112.  As Mayer has failed to state a claim under the First Amendment, we recommend that Count Three of her Complaint be dismissed in its entirety, as to Walvatne.[5]

---

[5]Since we conclude that Walvatne committed no violation of Mayer's constitutional rights, as to her claims arising from her arrest, we have no occasion to address the question of his qualified immunity.  As our Court of Appeals explained, in <u>Hinshaw v. Smith</u>, 436 F.3d 997, 1004 (8th Cir. 2006):

> Qualified immunity protects public officials from personal liability under §1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)(internal marks omitted).  We first address whether the facts alleged show that the state actor's conduct violated a constitutional right.  Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004).  If that threshold question is answered in the negative, we need not proceed further, as the defendant is entitled to qualified immunity.

See also, <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004)("If the answer to this first inquiry is no, courts do not delve further into the qualified immunity inquiry," but
(continued...)

b.      The Federal Claims as to the County, and the Sheriff's Department.  In an action under Title 42 U.S.C. Section 1983, a public servant may be sued in an official, or in an individual capacity, or both.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  However, a suit against a public employee in that person's official capacity is merely a suit against the public employer.  Id., citing Kentucky v. Graham, 473 U.S. 159, 165 (1985).  The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action.  See, Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438  (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(stating that a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in Judgment against the State itself).  Such immunity also extends to State officials who are named as individual defendants acting in their official capacity.  Id.

---

[5](...continued)
"instead, the defendant is entitled to qualified immunity, and the suit is not permitted to proceed."), citing Saucier v. Katz, 533 U.S. 194, 200 (2001).

As a consequence, our analysis of the applicability of qualified immunity to the conduct of Walvatne proceeds no further.

In her Complaint, Mayer named Walvatne in both his individual capacity, and in his official capacity as the Grant County Sheriff.  We construe the official capacity claims as a suit against his employers, the County, and the Sheriff's Office.  However, the doctrine of <u>respondeat</u> <u>superior</u> does not apply to Section 1983 claims, which means that a defendant cannot be held vicariously liable for the alleged constitutional misdeeds of an employee, or subordinate.  See, <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Miller v. Compton</u>, 122 F.3d 1094, 1100 (8th Cir. 1997).  Stated otherwise, "[a] municipality cannot be held liable solely under §1983 on a respondeat superior theory." <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 603 (8th Cir. 2004), abrogated on other grounds by <u>Szabla v. City of Brooklyn Park</u>, 486 F.3d 385 (8th Cir. 2007), quoting <u>Monell v. Dept. of Social Services</u>, supra at 691.  Since we have already found that the County Defendant's Motion for Summary Judgment should be granted, as to Mayer's individual capacity claims against Walvatne, we recommend that Walvatne's official capacity claims also be dismissed.   See, <u>Brockinton v. City of Sherwood, Arkansas</u>, 503 F.3d 667, 674 (8th Cir. 2007).

A County or municipality can be liable under Section 1983, if a plaintiff can prove that it has adopted some policy, custom, or practice, that caused a violation of the plaintiff's Federal constitutional rights.  See, <u>City of Canton v. Harris</u>, 489 U.S.

- 26 -

378, 386-87 (1989); see also, <u>Lund v. Hennepin County</u>, 427 F.3d 1123, 1125 (8th Cir. 2005); <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting <u>Monell v. Dept. of Social Services</u>, supra at 690.

A plaintiff is not required to specifically plead the existence of an unconstitutional policy or custom, see, <u>Crumpley-Patterson v. Trinity Lutheran Hospital</u>, 388 F.3d 588, 591 (8th Cir. 2004), citing <u>Doe v. School Dist. of Norfolk</u>, 340 F.3d 605, 614 (8th Cir. 2003), but a failure to include "any allegations, reference, or language by which one could begin to draw an inference that the conduct complained of * * * resulted from an unconstitutional policy or custom," will render a Complaint defective. <u>Id.</u> Moreover, "a single incident is not sufficient to establish * * * a policy." <u>Ouzts v. Cummings</u>, 825 F.2d 1276, 1278 (8th Cir. 1987); see also, <u>Mann v.</u>

Yarnell, 497 F.3d 822, 828 (8th Cir. 2007); Davidson v. City of Minneapolis,

Minnesota, 490 F.3d 648, 659 (8th Cir. 2007), citing Oklahoma City v. Tuttle, 471

U.S. 808, 823-24 (1985).

In Count Five of her Complaint, supra at ¶¶44-47, Mayer alleges the existence

of "Municipal Liability/Custom and Policy."  Specifically, Mayer claims that the

County, and the Sheriff's Department, have an official custom and policy "to use

abusive authority when a citizen questions an officer's authority, or a private citizen

who claims lawful, state and county authority, when said law abiding citizen exerts

constitutionally protected rights."  Id. at ¶46.  In addition, Mayer alleges that the

County Defendants have a policy of "the unlawful and unreasonable and pretextual

stop of a citizen, the seizure of a citizen and her property and interference with a

citizen's constitutionally [sic] property," and that the County Defendants also "use

excessive force against citizens who question the authority of their officers, and/or

exert and claim their constitutionally protected rights."  Id. at ¶13. Mayer repeatedly

alleges that each of the alleged constitutional violations occurred as a result or a policy

or custom of the County Defendants.  See, generally, Complaint, supra.

Although Mayer purports to allege the existence of a policy or custom, in fact,

in her Complaint, she has only alleged one (1) incident involving the County

- 28 -

Defendants -- the one in which she was arrested pursuant to a valid Warrant.  The allegation, involving a single incident, is not sufficient to impose liability against the City, under Section 1983.  Further, at her deposition, Mayer was asked to clarify her position, regarding the existence of an unlawful custom or policy, and she acknowledged that she did not have examples of any occurrences that would support her claim, and she stated that her claim, that the County Defendants had instituted a policy to use excessive force during the arrest of suspects, was based largely on examples of police violence in other cities, which she had observed on the television.  See, <u>Affidavit of Bromeland</u>, supra at Exhibit B, at pages 107-09.

In short, we find that Mayer's conclusory allegation, that Walvatne acted pursuant to an official policy, without any additional evidentiary support, is legally insufficient to find that the County, or the Sheriff's Department, maintained an unconstitutional policy.  Accordingly, we recommend that the County Defendants' Motion for Summary Judgment be granted, as to all of Mayer's Federal claims.[6]

---

[6]In addition to Section 1983, Meyer purports to bring this action pursuant to Sections 1985, 1986, and 1988.  See, <u>Complaint</u>, supra at ¶1.  Section 1985 governs conspiracy to interfere with civil rights, and Subdivision 3 provides a cause of action for a person deprived of his civil rights or privileges.  "In order to state a cause of action under Section 1985(3) * * * one must allege some class-based discriminatory motive on the part of the conspirators."  <u>Kaylor v. Fields</u>, 661 F.2d 1177, 1184 (8th

(continued...)

2.    <u>Mahoney's Motion for Summary Judgment</u>.  Mahoney argues that Summary Judgment is appropriate on each of the Federal causes of action, as she is not a State actor.  In addition, Mahoney additionally asserts that, because Mayer has failed to allege a viable Federal claim, we lack jurisdiction to hear the State law claims against her and, alternatively, that there are no facts that would support those claims.

a.    <u>Federal Claims Against Mahoney</u>

i.    <u>Standard of Review</u>.  To state an actionable civil rights claim under Title 42 U.S.C. §1983, as Mayer asserts against Mahoney, a complainant must allege historical facts which, if proven true, would demonstrate that the named Defendant violated the complainant's Federal constitutional rights while acting under color of State law.  See, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); see also, <u>Hart v. City of Little Rock</u>, 432 F.3d 801, 804 (8th Cir. 2006), cert. denied, 547 U.S.

_____

[6](...continued)
Cir. 1981), citing <u>Massey v. Smith</u>, 555 F.2d 1355, 1356 (8th Cir. 1977).  Here, however, Mayer has failed to allege membership in any protected class, and so, she has failed to state a claim under Section 1985.  Moreover, a cause of action under Section 1986 is dependent on a valid Section 1985 claim, and therefore, we must also grant the County Defendants' Motion for Summary Judgment, as to that claim.  <u>Id.</u>

Section 1988 authorizes a prevailing party, in an action brought under Section 1983, 1985, and 1986, to be awarded reasonable attorney's fees.  See, <u>Title 42 U.S.C. §1988(b)</u>.  However, since Mayer is not a prevailing party in this matter, and is not represented, we also recommend that this claim be denied, as moot.

1207 (2006)(to state an actionable Section 1983 civil rights claim, a plaintiff must show "'(1) [a] violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right' "), quoting <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 606 (8th Cir. 2003), quoting, in turn, <u>Shrum v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001).  Although Federal Courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory:  the complaint must allege facts, which if true, state a claim as a matter of law." <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1980); see also, <u>Martin v. Sargent</u>, supra at 1337 ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions.").

To determine whether there is State action in a matter, we examine the Record to ascertain "whether the conduct at issue is 'fairly attributable' to the state.'" <u>Wickersham v. City of Columbia</u>, 481 F.3d 591, 597 (8th Cir. 2007), cert. denied., --- U.S. ---, 128 S.Ct. 387 (2007), quoting <u>Montano v. Hedgepeth</u>, 120 F.3d 844, 848-49 (8th Cir. 1997), quoting, in turn, <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).  Although the requirement, that a claim under Section 1983 must have been undertaken under color of State law, excludes "merely private conduct, no matter how discriminatory or wrongful," <u>Americans United for Separation of Church and State v.</u>

Prison Fellowship Ministries, Inc., 509 F.3d 406, 421-22 (8th Cir. 2007), quoting

American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50 (1999),

quoting, in turn, Blum v. Yaretsky, 457 U.S. 991, 102 (1992), "[i]n certain

circumstances the government may become so entangled in private conduct that 'the

deed of an ostensibly private organization or individual is to be treated * * * as if a

State had caused it to be performed.'"   Id. at 422, quoting Wickersham v. City of

Columbia, supra at 597, quoting, in turn, Brentwood Academy v. Tennessee

Secondary School Athletic Association, 531 U.S. 288, 295 (2001).

Factors to be considered in weighing whether the disputed conduct is "fairly

attributable" to the State include: "the extent to which the actor relies on governmental

assistance and benefits; whether the actor is performing a traditional government

function; and whether the incident is aggravated in a unique way by the incidents of

governmental authority."   Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007),

citing Edmonson v. Leesville Concrete Co., 500 U.S. 614, 621-22 (1991). State action

will be found if there is a "such a close nexus between the State and the challenged

action that seemingly private behavior may be fairly treated as that of the State itself,"

Brentwood Academy v. Tennessee Secondary School Athletic Association, supra at

295, as when the private actor performs a function "traditionally exclusively reserved

to the state," <u>Reasonover v. St. Louis Co., Mo.</u>, 447 F.3d 569, 584 (8th Cir. 2006),

quoting <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 352 (1974), when a private party

is "a willful participant in joint activity with the State or its agents," <u>Wickersham v.

City of Columbia</u>, supra at 597, quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

152 (1970), or where there is "pervasive entwinement" between the private entity and

the State.   <u>Wickersham v. City of Columbia</u>, supra at 597, quoting <u>Brentwood

Academy v. Tennessee Secondary School Athletic Association</u>, supra at 291.

The Supreme Court has established a two-part test to determine if such a nexus

exists:

> First, the deprivation must be caused by the exercise of
> some right or privilege created by the State or by a rule of
> conduct imposed by the State or by a person for whom the
> State is responsible * * *.  Second, the party charged with
> the deprivation must be a person who may fairly be said to
> be a state actor.  This may be because he is a state official,
> because he has acted together with or has obtained
> significant aid from state officials, or because his conduct
> is otherwise chargeable to the State.

<u>Lugar v. Edmondson Oil Co., Inc.</u>, supra at 937.

We apply these principles in our analysis of Mayer's Federal claims against Mahoney.

ii.   <u>Legal Analysis</u>.  In her Complaint, Mayer alleges that

Mahoney acted under color of State law, since Mahoney "claims to have the legal and

- 33 -

lawful authority, under color of state and county law, to require all deeds to be recorded by the county recorder prior to Mahoney paying the property taxes thereon." Complaint, supra at ¶¶9, 12.  Mayer also asserts that Mahoney conspired with the County Defendants by requesting that they unlawfully arrest her, which  interfered with her property rights.  Id. at ¶14.

Given these assertions, Mayer advances three (3) theories in support of her argument that Mahoney was acting under color of State law:  1) Mahoney's status as a State-licensed title agent, id. at ¶9; 2) the listing of the Abstract Company's address as the County Courthouse, id. at ¶19; and 3) the existence of a "conspiracy" between Mahoney and the County Defendants.  Id. at ¶14.

First, Mayer alleges that Mahoney acted under color of State law, because Mayer is licensed by the State to act as a title agent.  In Smith v. Insley's Inc., 499 F.3d 875 (8th Cir. 2007), a plaintiff brought a Section 1983 claim against a towing company, that had impounded his vehicle at the request of a sheriff's department, and that subsequently sold the vehicle when it was not claimed by the plaintiff, who was in jail.  The Court found that the towing company had acted under color of State law when it towed the vehicle, because it was under contract with the State, and was

performing the traditional government function of seizing and securing property as part of a criminal investigation.  Id. at 880.

In contrast, in Comiskey v. JFTJ Corp., 989 F.2d 1007, 1011 (8th Cir. 1993), the Court found that the fact that a bar had been issued a liquor license did not make it a "State actor" for the purposes of a Section 1983 claim.  In so finding, the Court noted that the bar did not receive any public funding, that there was no suggestion that any State regulation, or action, had led to the establishing of any of the bar's allegedly discriminatory policies, or that any reasonable person would see a "symbiotic relationship" between the State, and the bar, that would allow an inference that the State had placed its "power, property and prestige" behind the alleged discrimination. Id.; see also, Gayman v. Principal Financial Services, Inc., 311 F.3d 851, 853 (7th Cir. 2002)(noting that the fact that an attorney must maintain a professional license and is subject to regulation does not establish than he is a State actor); Marts v. Times Picayune Publishing Co., 47 F.3d 423 at *1 (5th Cir. 1995)("A private entity does not become a state actor because it holds a license granted by the state."), quoting Gipson v. Rosenberg, 797 F.2d 224, 225 (5th Cir. 1986).

Mayer argues that the fact that Mahoney is licensed by the State so as to perform a real estate closing, or to record a deed, establishes that she is a State actor.

- 35 -

Unlike the towing company in <u>Smith v. Insley's Inc.</u>, supra, the Abstract Company is a privately-owned company, which is not under contract with the State in order to perform any traditional State services.  See, <u>Affidavit of Mahoney</u>, <u>Docket No. 25</u>, at ¶2.  In fact, Mayer acknowledges that, at all relevant times, Mahoney was under contract with Bud Nelson, who is a local realtor and private party, to perform the closing services on the Property.  See, <u>Plaintiff's Declaration</u>, supra at ¶3.  Mayer has not alleged that Mahoney is in any way under contract with the State, or that the State played any role in endorsing any of Mahoney's actions which form the basis of her claim that Mahoney violated her constitutional rights, and the mere fact that Mahoney is licensed by the State, as a title agent, is not sufficient to establish that Mahoney is a State actor.

Next, Mayer charges that the Secretary of State lists an address for the Abstract Company that is located in the Courthouse.  See, <u>Complaint</u>, supra at ¶19.  However, at her deposition, Mayer acknowledged that she had been to the offices of the Abstract Company, which is actually located several blocks from the Courthouse.  See, <u>Affidavit of Wass</u>, supra at Exhibit A, at page 44.  Moreover, merely having an address, that is listed in the same building as a State agency, is insufficient to establish that the addressee is acting under color of State law.  Cf., <u>Burton v. Wilmington</u>

- 36 -

Parking Authority, 365 U.S. 715, 723-24 (1961)(holding that a restaurant was a State actor, when it was located in a parking structure that was owned by the State, and the restaurant revenues were an integral part of the State budget for the facility).

Finally, Mayer alleges that Mahoney was a State actor, since she conspired with Walvatne, and the other Defendants, to deprive Mayer of her rights.  Nonetheless, we proceed in the interests of completeness.  To prove a conspiracy claim under Section 1983, a plaintiff must show: "1) that the defendant conspired with others to deprive him of constitutional rights; 2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy;  and 3) that the overt act injured the plaintiff," and must additionally demonstrate a deprivation of a constitutional right or privilege.  White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008), citing Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999); see also, Gunter v. Morrison, 497 F.3d 868, 873 (8th Cir. 2007).

Under Section 1983, a private actor can be liable for conspiring with State officials to violate a private citizen's rights, and "[t]he key inquiry is whether the private party was a willful participant in the corrupt conspiracy."  Id. at 816, citing DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999).  In order to survive a Motion for Summary Judgment, a plaintiff, in a Section 1983 action, does not need to establish

that each participant "knew the exact limits of the illegal plan," so long as "there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." Id., quoting Larson by Larson v. Miller, 76 F.3d 1446, 1448 (8th Cir. 1996).  To grant Summary Judgment on a conspiracy claim under Section 1983, "[t]he court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." Id., quoting Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733, 743 (8th Cir. 1982).

The Complaint alleges that Mahoney conspired with the County Defendants to violate Mayer's rights under the First, Fourth, Fifth, and Fourteenth Amendments. However, Mayer's claims against Mahoney, as to those alleged violations, are identical to those that we previously rejected, in our analysis of the County Defendants' Motion for Summary Judgment, and therefore, they cannot serve as the basis for her claim that Mahoney is a State actor, pursuant to a conspiracy with the County Defendants.

We note that, in her Complaint, supra at ¶9, Mayer asserts that Walvatne arrested her, pursuant to the request of Mahoney.  However, at her deposition, Mayer admitted that she based that allegation on the Statement of the Case, that was prepared

- 38 -

by counsel for the County Defendants, see, <u>Affidavit of Wass</u>, supra at Exhibit A, at pages 40-41, and, as we previously noted, Walvatne has attested that Mahoney did not ask him to run a Warrant check on Mayer, that he was not aware of the existence of the Arrest Warrant until two (2) weeks after the date of the real estate closing at the Abstract Company office, and that, on January 4, 2007, he arrested Mayer pursuant to that Warrant.  See, <u>Affidavit of Walvatne</u>, supra at ¶¶3-5.

Since we have found that Walvatne did not violate Mayer's Fourth Amendment rights, when he arrested her pursuant to a valid Warrant, her claim, that Mahoney urged Walvatne to arrest her, fails to demonstrate that Mahoney conspired with a State actor.  By extension, Mayer's claim, that Mahoney was in some way involved in her deprivation of a property interest, due to the bail that she paid after her arrest, see, <u>Complaint</u>, <u>Docket No. 1</u>, at ¶9, also fails to provide a basis for her claim under Section 1983, as that alleged violation arose out of Mayer's lawful arrest.  In sum, we recommend that Mahoney's Motion for Summary Judgment, as to Mayer's Federal law claims, be granted.[7]

---

[7]Finally, because we find that Mahoney is not a State actor, Mayer's claims, under Title 42 U.S.C. §§1985, 1986, and 1988, must also fail as a matter of law.

3.      State Law Claims as to All Defendants.  Mayer has also alleged

two (2)  State law claims, namely Count Six, which alleges various violations of the

State Constitution, and Count Seven, which asserts an IIED claim.

As our Court of Appeals recently explained, in Gilson v. Weber, 433 F.3d 642,

647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to
> exercise supplemental jurisdiction over a claim * * * [if]
> the district court has dismissed all claims over which it has
> original jurisdiction."   Congress unambiguously gave
> district courts discretion in 28 U.S.C. §1367(c) to dismiss
> supplemental state law claims when all federal claims have
> been dismissed, and there is no basis to find an abuse of
> discretion here.  See Labickas v. Arkansas State University,
> 78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1,
> 30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine -- judicial

economy, convenience, fairness, and comity -- will point toward declining to exercise

jurisdiction over the remaining state-law claims."  Barstad v. Murray County, 420

F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343,

350 n. 7 (1988).

Here, we have found no violation of Mayer's constitutional rights arising under Federal law, and we have recommended the entry of Summary Judgment, in favor of all of the Defendants, as to those claims.  As a consequence, we further recommend that the District Court decline to exercise supplemental jurisdiction over Mayer's purely State law claims.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That Mahoney's Motion for Summary Judgment [Docket No. 23] be granted.

2.     That the County Defendants' Motion for Summary Judgment [Docket No. 40] be granted.

3.     That the Plaintiff's State law claims be dismissed, without prejudice, pursuant to Title 28 U.S.C. §1367(c)(3).


Dated:  August 1, 2008                           s/Raymond L. Erickson
                                                  Raymond L. Erickson
                                                  CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 18, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 18, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.

- 42 -